UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALFREDO GOMEZ, | ) | Case No. CV 05-2684-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    Plaintiff Alfredo Gomez filed a complaint on April 14, 2005, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on September 6, 2005, and the parties filed a joint stipulation on November 1, 2005.

## BACKGROUND

### I

    On November 8, 2002 (protective filing date), plaintiff applied for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act ("the Act"), claiming

an inability to work since December 31, **1997**, due to diabetes and kidney damage.  Certified Administrative Record ("A.R.") 112-28, 159.[1] The plaintiff's application was denied on January 30, 2003.  A.R. 93-96.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Frederick H. Graf ("the ALJ") on September 23, 2003.  A.R. 68-83, 99.  On October 23, 2003, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 55-62.  The plaintiff appealed this decision to the Appeals Council, which denied review on February 17, 2005.  A.R. 4-6, 53-54.

**II**

The plaintiff, who was born on March 8, 1959, is currently 47 years old.  A.R. 104.  He has a tenth-grade education and has previously worked as a laborer and janitor.  A.R. 71-72, 135, 138-39, 165, 172-79.

For the past 20 years, plaintiff has had insulin-dependent diabetes mellitus.[2]  A.R. 194, 352.  Between December 1, 1995, and January 6, 2004, plaintiff received medical treatment for his diabetes at the Broadway Family Medical Center ("Clinic"), where he also was diagnosed with other physical conditions, including lower back pain, headaches and hypertension.  A.R. 10-49, 201-56, 265-353.

---

[1] The plaintiff previously applied for SSI benefits on July 23, 1998; however, this application was denied on October 21, 1998, and was not further pursued.  A.R. 86-89, 104-06.

[2] Insulin-dependent diabetes mellitus, also known as type I diabetes mellitus, requires dependency "on exogenous insulin to sustain life."  Dorland's Illustrated Medical Dictionary, 489 (29th ed. 2000).

On September 22, 1998, Nyun Nyun Soe, M.D., examined plaintiff, diagnosed him with insulin-dependent diabetes mellitus, and opined plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, and sit, stand and/or walk for 6 hours out of an 8-hour work day. A.R. 194-98.

On October 14, 1998, B. Davies, M.D., a nontreating, nonexamining physician opined plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, and sit, stand and/or walk for 6 hours out of an 8-hour work day. A.R. 257-64.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), may set aside the Commissioner's denial of benefits to plaintiff only if the decision is based on legal error or not supported by substantial evidence. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

3

1    The claimant is "disabled" for the purpose of receiving benefits
2 under the Act if he is unable to engage in any substantial gainful
3 activity due to an impairment which has lasted, or is expected to
4 last, for a continuous period of at least twelve months.  42 U.S.C. §
5 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
6 burden of establishing a prima facie case of disability." Roberts v.
7 Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
8 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).
9
10   Regulations promulgated by the Commissioner establish a five-step
11 sequential evaluation process to be followed by the ALJ in a
12 disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
13 must determine whether the claimant is currently engaged in
14 substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
15 **Second Step**, the ALJ must determine whether the claimant has a severe
16 impairment or combination of impairments significantly limiting him
17 from performing basic work activities.  20 C.F.R. § 416.920(c).  If
18 so, in the **Third Step**, the ALJ must determine whether the claimant has
19 an impairment or combination of impairments that meets or equals the
20 requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §
21 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
22 **Fourth Step**, the ALJ must determine whether the claimant has
23 sufficient residual functional capacity despite the impairment or
24 various limitations to perform his past work.  20 C.F.R. § 416.920(f).
25 If not, in **Step Five**, the burden shifts to the Commissioner to show
26 the claimant can perform other work that exists in significant numbers
27 in the national economy.  20 C.F.R. § 416.920(g).
28 //

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since November 8, 2002. (Step One).  The ALJ then found plaintiff "has an impairment or a combination of impairments considered 'severe[,]'" including insulin-dependent diabetes mellitus, hypertension, and a history of headaches and hepatitis C (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff has no past relevant work.  (Step Four).  Finally, the ALJ found plaintiff is not disabled under Rule 203.25 of the Medical-Vocational Guidelines. (Step Five).

**IV**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff retains the RFC to perform "the full range of medium work."[3]  A.R. 61.  However, plaintiff contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly rejected his treating physician's opinion, erroneously found he was not a credible witness and did not properly develop the administrative record.

//

---

[3] Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

**A.   Treating Physician's Opinion**:

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. § 416.927(d)(2) (generally providing more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)"). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, Clinic's records contain several unsigned statements that plaintiff was temporarily totally disabled between: an unspecified date and September 30, 2001; an unspecified date and March 24, 2002; an unspecified date and March 20, 2003; and March 4 and June 4, 2003. A.R. 37, 275, 316, 334, 349. However, the ALJ discounted these records because they "contained no detailed findings or narrative assessment" and they are contradicted by "negative examination findings[.]" A.R. 59; see also A.R. 271-72, 330. As an initial matter, it is not at all clear that these records are by plaintiff's treating physician. Nevertheless, assuming *arguendo* they are by

plaintiff's treating physician, the ALJ properly discounted them because they "are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." Batson v. Commissioner of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted)); Bayliss, 427 F.3d at 1216. Similarly, the ALJ properly discounted the unsigned statements because they are contradicted by examination findings. Bayliss, 427 F.3d at 1216; see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating physician's opinion claimant is disabled when opinion is inconsistent with examination findings). Thus, the ALJ provided clear and convincing reasons for rejecting the unsigned statements in Clinic's records.

**B.   Credibility:**

The plaintiff testified at the administrative hearing that he is unable to work because he has diabetes that is "all out of control." A.R. 73. The plaintiff explained that sometimes his blood sugar is too high and he gets "really tired and sleepy" and needs to rest and, at other times, his blood sugar is too low, which causes headaches and is dangerous to him. A.R. 74, 76. The plaintiff testified he gets headaches 2-3 times each week, and each headache lasts 2 or 3 hours. A.R. 76. Further, plaintiff averred he has poor circulation and experiences numbness and tingling in his feet, which also get cold if he is not sitting correctly, he experiences blurred vision, which is helped with reading glasses, and he goes to the bathroom up to 20 times a day. A.R. 74-76, 81-82. Finally, plaintiff stated he takes insulin twice a day for his diabetes. A.R. 73-74.

//

Once a claimant has presented objective evidence he suffers from an impairment that could cause pain or other nonexertional limitations,[4] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings supporting that conclusion. Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found plaintiff's diabetes and headaches are controllable with treatment, but that plaintiff has not complied with his regimen of treatment, and has not followed a special diet and taken the prescribed medication, and plaintiff has been drinking alcohol. A.R. 59-60; see also A.R. 14, 281, 308, 310. A "failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's testimony." Fair v. Bowen, 885 F.2d

---

[4] "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

1  597, 603 (9th Cir. 1989); Bunnell, 947 F.2d at 346.

3     The ALJ also found plaintiff was not credible because he does all his own cooking, grocery shopping and laundry and cleans his own apartment, does "odd jobs around the house[,]" including maintenance, and exercises and likes to walk and play handball.  A.R. 59-60, 73, 154-57.  "An ability to perform such [daily] activities may be seen as inconsistent with the presence of a condition which would preclude all work activity."  Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's daily activities, including cooking, laundry, washing dishes, and shopping, support adverse credibility finding); Morgan, 169 F.3d at 600 (claimant's ability to fix meals, do laundry, work in yard, and occasionally care for friend's child contradict claim of disability and support finding claimant is able to work); Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir. 1998) (ALJ properly rejected claimant's pain complaints based, in part, on claimant's testimony she did laundry, cleaned house, vacuumed, mopped, dusted and shopped for groceries); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam)(claimant's ability to "perform[] various household chores such as cooking, doing the dishes, going to the store, visiting relatives, and driving" support ALJ's conclusion claimant's complaints of pain and fatigue are exaggerated).

25    Finally, the ALJ found plaintiff is "a somewhat inconsistent and unreliable historian" since "he testified as to no work activity since 1986 or 1988," which contradicts other evidence in the record that between 1995 and 2002 he worked cleaning school yards five days a

1  month.  A.R. 59-60, 72, 172-73.  An ALJ may properly rely on
2  inconsistencies in a claimant's testimony to determine he is not a
3  credible witness.[5]  Batson, 359 F.3d at 1196; Connett, 340 F.3d at
4  873-74.  Thus, "[t]he ALJ gave [several] specific, clear and
5  convincing reasons for discounting [plaintiff's] testimony."  Thomas,
6  278 F.3d at 959.

### C. Duty to Develop the Record:

"'In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  Smolen, 80 F.3d at 1288 (citation omitted); see also Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir.

---

[5] The plaintiff argues there is no inconsistency here since "close review of Mr. Gomez'[s] testimony and his work history report support[s] Mr. Gomez'[s] statement that he has not 'worked for a company' since around 1986.  Mr. Gomez'[s] work history report evidences that Mr. Gomez was not paid for the work he performed cleaning a school.  Mr. Gomez performed the work to receive his General Relief check and food stamps.  This is confirmed by the earnings report, which shows virtually no earnings in the last 15 years."  Jt. Stip. at 10:17-24.  Plaintiff's argument is without merit, as the following colloquy at the administrative hearing discloses:

[ALJ]:   What's the last time you worked?
[Pl]:    For a company – let's see.  Oh, boy that was like in 1986 – I couldn't be sure. . . .
[ALJ]:   Okay.  *So from 1988 to the present, have you not ever worked*?
[Pl]:    *No*.

A.R. 72 (emphasis added).  Thus, plaintiff specifically denied he had worked since 1988 -- not just worked for a company.  Moreover, plaintiff also stated that, in addition to food stamps, he was paid $220.00 a month for cleaning the school grounds.  A.R. 173.

1992) (per curiam) ("We have long recognized that the ALJ is not a mere umpire at [an administrative hearing], but has an independent duty to fully develop the record. . . ."). This duty exists regardless of whether the claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (citations omitted); Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

The plaintiff contends the ALJ failed to develop the record because, in determining plaintiff retains RFC to perform medium work, the ALJ relied on "stale" medical evidence – the 1998 opinions of examining physician Nyun Nyun Soe, M.D., and nontreating, nonexamining physician B. Davies, M.D. Jt. Stip. at 3:22-4:11. However, plaintiff has not identified any ambiguous evidence demonstrating the record was inadequate, nor did the ALJ find the record was in any manner insufficient to assess plaintiff's RFC.[6] To the contrary, the opinions of Drs. Soe and Davies were both authored after plaintiff's alleged disability began. Additionally, the ALJ reviewed extensive

---

[6] Taking one of the ALJ's statements completely out of context, plaintiff argues the ALJ "conceded" ambiguity of the record when stating in his decision that "'[c]laimant's residual functional capacity remains to be assessed.'" Jt. Stip. at 4:9-11. However, the foregoing statement was made before the ALJ proceeded to evaluate the medical evidence and assess plaintiff's RFC in Step Five. In other words, the statement cited by plaintiff is merely a precursor to the ALJ's own assessment of plaintiff's RFC, and it cannot fairly be read in any other manner.

medical records from Clinic, which, as the ALJ found, do not show that plaintiff's condition has significantly changed since Drs. Soe and Davies gave their opinions.[7] A.R. 60. In short, "[t]he record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 460. Therefore, the ALJ did not fail to properly develop the medical record.[8]

For all these reasons, the ALJ's Step Five determination is not legally erroneous and is supported by substantial evidence.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:　August 22, 2006　　　　　　　　/s/ Rosalyn M. Chapman
　　　　　　　　　　　　　　　　　　　ROSALYN M. CHAPMAN
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[7] The plaintiff argues that he had not yet been diagnosed with hepatitis C when Dr. Soe examined him. Jt. Stip. at 4:2-3. However, this is irrelevant to the ALJ's Step Five determination since the ALJ found "[t]here is no evidence of significant limitations associated with [plaintiff's] history of hepatitis C[,]" A.R. 59, and plaintiff has not shown that this finding is not supported by substantial evidence.

[8] To the contrary, the opinions of Drs. Soe and Davies support the ALJ's assessment of plaintiff's RFC, see Tonapetyan, 242 F.3d at 1149 (examining physician's medical report constitutes substantial evidence supporting ALJ's disability determination); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."), cert. denied, 519 U.S. 1113 (1997), and the ALJ then properly applied Rule 203.25 of the Medical-Vocational Guidelines to determine plaintiff is not disabled.

R&R-MDO\05-2684.MDO - 8/22/06